UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

_____

No. 11-1775
_____

_____

UNITED STATES OF AMERICA,
Appellee

v.

JASON W. PLEAU
Defendant-Appellant
_____


No. 11-1782
_____

_____

IN RE

JASON W. PLEAU
Petitioner
_____

MOTION FOR STAY OF MANDATE PENDING SUPREME
COURT DISPOSITION AND OBJECTION TO UNITED STATES
MOTION FOR IMMEDIATE ISSUANCE OF THE MANDATE

Intervenor, Lincoln Chafee, in his capacity as Governor of the State of

Rhode Island, and Jason Pleau, jointly file this motion for a stay of the mandate

pursuant to Rule 41 of the Federal Rules of Appellate Procedure and this objection to the United States motion for immediate issuance of the mandate. The movants seek the stay in order to preserve the right of the United States Supreme Court to consider judicial review of this Court's closely divided en banc decision. Rule 41 (d) (2) permits this Court to grant a stay of the mandate pending appeal to the United States Supreme Court provided that the party requesting the stay "show that the certiorari petition would present a substantial question and that there is good cause for the stay." Both elements are present in this important and complex case. The Governor and Jason Pleau are filing a single, joint pleading; they have similar arguments in requesting a stay to allow the United States Supreme Court to consider this case.[1]

The standard to obtain a stay of a mandate has been summarized by one leading commentator as follows:

> Since the stay of a mandate is a form of temporary injunction, the circuit court's inquiry centers on whether the applicant will suffer irreparable injury, and whether the applicant has a reasonable probability of success on the merits. The court must also take into consideration the public interest. To demonstrate a reasonable probability of succeeding on the merits, the applicant must show a reasonable probability that four

---

[1] The en banc opinion concluded that in light of the Governor's unquestioned standing, it did not have to resolve the question of Pleau's standing. At this stage of the proceedings, seeking the opportunity for Supreme Court review, this Court need not further address that issue. Pleau has always maintained he has standing. His interest in the outcome of this litigation is clear. See Bond v. United States, 131 S.Ct. 2355 (2011).

> justices will vote to grant certiorari and a reasonable possibility
> or "fair prospect" that five justices will vote to reverse the circuit
> court's judgment. [Footnotes omitted]

Vol. 20A, Moore's Federal Practice, §341.14[2], (Mathew Bender 3rd Ed.).

By every account in this case, the decision by Governor Chafee is the first known instance since the passage of the IAD in 1970 in which a Governor has rejected a request by the United States under the IAD. There is clearly a strong difference of opinion as to the authority of the Governor. Two members of this Court believe that the IAD gives him that authority. The position of the Governor and Pleau was backed by an amicus brief filed on behalf of the National Governors Association and the Council of State Governments. A second supporting amicus brief was filed on behalf of a wide array of other organizations, including American Civil Liberties Union affiliates, the Colegio de Abogados de Puerto Rico, known as the Puerto Rico Bar Association, and criminal defense organizations.

The strongest argument in support of this request for a stay is the dissenting opinion by Judge Torruella, joined by Judge Thompson. It crystallizes the significant divergence of opinion in this case and in the process highlights the "reasonable probability" that the Supreme Court will grant certiorari in this matter and the "fair prospect" that five justices will vote to reverse the en banc decision. This pleading is not a vehicle to reargue the merits of this case, but rather a request

to allow the parties to make their case to the United States Supreme Court. The dissenting opinion in its opening statements identifies precisely why there is a "reasonable probability" the Supreme Court will hear this case. The dissent says the majority opinion is in conflict with settled Supreme Court precedent on interstate compacts:

> As the Supreme Court has stated multiple times, federal courts should not "'order relief inconsistent with [the] express terms' of a compact, 'no matter what the equities of the circumstances might otherwise invite.'" Alabama v. North Carolina, 130 S. Ct. 2295, 2313 (2010) (quoting New Jersey v. New York, 523 U.S. 767, 811 (1998)). Yet with its ruling, the majority has done exactly what the Supreme Court said courts must not do:....

Opinion at 14.

Later, the dissent, citing to language in United States v. Mauro, 436 U.S. 340 (1978), says, "... I cannot fathom how a serious argument can be made that the United States is not fully bound by all the provisions of the IAD." Opinion at 29. The dissent goes on to argue that Mauro in fact supports the position of the Governor and Pleau. The dissent also describes the holding in United States v. Scheer, 729 F.2d 164 (2nd Cir. 1984), as favorable to the Governor's position and rejects the majority's characterization of this holding as dicta or a misreading of Mauro.

These brief highlights from the dissent are cited to make two points. They support the argument that there is a likelihood that the Supreme Court will hear

4

this case because the majority opinion is in conflict with settled Supreme Court precedent. They also point out that the en banc opinion is in conflict with the opinion of the United States Court of Appeals for the Second Circuit in <u>United States v. Scheer</u>.

The en banc opinion, while adverse to the position of the Governor and Pleau, affirms the right of the Governor to argue for an advisory writ of prohibition. In doing so, the Court defined the requirements for advisory mandamus:

> the issue be an unsettled one of substantial public importance, that it be likely to recur, and that deferral of review would potentially impair the opportunity for effective review or relief later on. [citation omitted]

Opinion at 6. The en banc opinion goes on to say that this is a matter of importance and opines that states would mount more challenges to federal writs if they could. Opinion at 6.

While there is strong disagreement about the ultimate resolution of this case, there seems to be virtual unanimity that the case presents a question of great public importance. The en banc opinion suggests the resolution of the question is important not just to the parties but to other states that are party to the IAD, and by implication, to the enforcement of federal criminal law generally. The breadth of interests represented by the amicus curiae briefs reinforce the great significance of the issues raised by this case.

Finally, the interests of the State of Rhode Island will be irreparably injured if a stay is not granted. Rhode Island's sovereign interest in refusing another party state's request for a prisoner transfer – as guaranteed by Congress through the express language of the IAD – will suffer if the mandate is not stayed and Pleau is transferred to federal custody before the United States Supreme Court has been given the opportunity to review the case. That injury to Rhode Island's sovereign interests cannot be undone. Similar sovereignty concerns are shared by other states that are a party to the IAD.

As such, the movants believe that there is at least a "fair prospect" that the Supreme Court will reverse the en banc decision in this case. The issue to be presented to the Supreme Court is clearly a legal issue, not a factual issue. This Court is closely divided on the issue and a broad range of stakeholders (as reflected by strong amicus participation in this case) has urged this Court to support Congress and the parties' agreement as set forth in the IAD. The en banc decision conflicts with settled Supreme Court precedent and the opinion of the Second Circuit in United States v. Scheer. In considering the application for a stay of the mandate, the Court considers the likelihood of success on the merits, the public interest, and the question of whether the movants will suffer irreparable injury. As noted previously, the en banc opinion states that this case presents a matter of importance and the en banc opinion concludes that if permitted more states would

mount more challenges to federal court writs. The public interest is furthered by a resolution of these important issues by the Supreme Court. A divided en banc decision, with a strong dissent and national groups taking a position contrary to the en banc decision, will spawn litigation and uncertainty that is best resolved by a Supreme Court decision.

If a stay is not granted, the immediate injury to the State of Rhode Island's sovereignty is clear. The en banc opinion also identifies a longer term injury: "Whether Pleau would be prejudiced if review now were refused is less clear; but the governor could hardly obtain meaningful relief following a federal conviction of Pleau." Opinion at 6. The clear implication of the above passage is that absent a stay, the Governor might forever lose his right to seek review in the United States Supreme Court. When Pleau first applied to this Court for a stay with respect to the issuance and execution of a writ of habeas corpus ad prosequendum, he expressed his concern that if he were produced before the United States District Court, the United States would argue that he had no longer had the right to contest his production under the IAD. That concern still exists.[2] The risk that either

---

[2] As Pleau argued in his initial motion for a stay with respect to the issuance and execution of a writ of habeas corpus ad prosequendum, he maintains that even if produced before the District Court he would have the right to challenge his production as a violation of his rights under the IAD. See Bloomgarden v. Bureau of Prisons, 2011 WL 1301541 (9th Cir. Apr. 6, 2011)(Unpub).

7

movant might lose the right to have a meaningful review of the issues raised in this case clearly constitutes irreparable injury.

For the reasons set forth above, the movants object to the United States' Motion for Immediate Issuance of the Mandate and move for a stay of the issuance of the mandate pending the timely filing of a petition for a writ of certiorari in accordance with the provisions of Rule 41 of the Federal Rules of Appellate Procedure.

JASON PLEAU

By his Attorneys:

| | |
|---|---|
| _____ | /s/ Robert B. Mann_____ |
| DAVID P. HOOSE, ESQ. 25179 | ROBERT B. MANN 12247 |
| SASSON, TURNBULL & HOOSE | MANN & MITCHELL |
| 100 Main Street, Third Floor | One Turks Head Place, Ste. 610 |
| Northampton, MA 01060 | Providence, R.I. 02903 |
| (413) 586-4800 | (401) 351-5770 |

Governor Lincoln D. Chafee, in his
Capacity as Governor of the State
Of Rhode Island

By his Attorney,


/s/ Claire Richards_____
Claire Richards (#32606)
Executive Counsel
State House, Room 119
Providence, RI 02903
(401) 222-8114
(401) 222-8091

## **CERTIFICATION**

      I hereby certify that on this 11th day of May, 2012, I did send a true copy of the within document by electronic means (ECF) to:

Donald Lockhart, AUSA

                              /s/Robert B. Mann
                              Robert B. Mann #0153
                              Mann & Mitchell
                              610 Turks Head Place
                              Providence, RI 02903
                              (401) 351-5770
                              rmann@conversent.net